**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and ) <br> STATE OF ILLINOIS ex rel. ) <br> DANIEL FRAWLEY, and DANIEL ) <br> FRAWLEY, and MAUREEN FRAWLEY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ANTHONY MCMAHON, ESTATE OF FRANK ) <br> MCMAHON, JOHN MCMAHON, NANCY ) <br> MCMAHON, KATHLEEN MCMAHON, ) <br> BRIDGET MCMAHON, SUSAN THIES, ) <br> CHRISTINE STAJSCZAK, MARY CATHERINE ) <br> HRASCINSKI, DANIEL HEBERT, BRETT ) <br> SIEBERT, MCMAHON FOOD CORPORATION, ) <br> MCMAHON DAIRY PRODUCTS, INC., C&M ) <br> JV1 COMPANY, LTD., C & C DAIRY, INC. ) <br> KRYSTALDAIRY SERVICES, INC., WINDY ) <br> CITY ELECTRIC CO., WINDY CITY ELECTRIC ) <br> AVIATION CORPORATION, ACE ) <br> MECHANICALCO. and PLUMBING SYSTEMS, ) <br> INC., ) <br> ) <br> Defendants. ) | CASE NO.: 11 CV 04620 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff-Relators bring this *qui tam* action against Defendants, alleging violations of the False Claims Act ("FCA") and the Illinois False Claims Act ("IFCA"). Specifically, they allege false claims in violation of 31 U.S.C. § 3729(a)(1) and ILCS 175/3(a)(1) (Counts I and IV, respectively); false statements in violation of 31 U.S.C. § 3729(a)(1)(B) and ILCS 175/3(a)(2) (Counts II and V, respectively); conspiracy to violate the FCA in violation of 31 U.S.C. § 3729(a)(1)(C) and ILCS 175/3(a)(3) (Counts III and VI). This matter is before the Court on

1

Defendants' motion to dismiss Relators' amended complaint [50]. For the reasons stated below, the Court grants Defendants' motion to dismiss [51] in its entirety. However, if Relators have additional factual allegations they believe may overcome the deficiencies identified by the Court and the deficiencies they acknowledge with respect to Defendant Brett Siebert[1], they may file an amended complaint within 28 days of the entry of this memorandum opinion and order. If Plaintiffs choose not to replead, or if all federal claims in their amended complaint are dismissed, the Court will dismiss the state law claims without prejudice.

**I.    Background[2]**

On July 8, 2011, Relators Daniel and Maureen Frawley filed a complaint under seal, alleging various violations of the FCA and the IFCA. The United States of America and the State of Illinois declined to intervene in the action on November 25, 2013. The Court subsequently unsealed Relators' initial complaint, and on February 27, 2014, Relators filed an amended complaint ("FAC") with leave of the Court.

The alleged scheme relates to the City of Chicago's Minority and Women Owned Business Enterprise Procurement Program, a program that aims to enhance opportunities for minority and women-owned business enterprises ("MBEs/WBEs") to compete for government contracts. According to the amended complaint, a business must be certified by the City as an MBE or WBE to participate in the program. To receive certification, a business must meet three criteria. First, at least fifty one percent of the company must be owned and controlled by at least

---

[1] The FAC names the McMahon's brother-in-law, Brett Siebert, as a co-Defendant. It alleges only that one of Brett Siebert's construction companies, financed by the McMahons, built an addition to the McMahon's headquarters. Relators' response motion requests leave to amend the pleadings to add additional allegations against this Defendant, and their request is granted.

[2] For the purposes of Defendant's motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

2

one minority or female. Second, management and daily operations must be controlled by at least one minority or female. Third, the company must be a viable, independent business, and the minority or female principal must have the resources and expertise necessary to operate the business without substantial reliance on non-minority or male businesses. Approved certifications are valid for a period of five years, after which they must be renewed in order to continue working with the City as an MBE/WBE.

The FAC alleges that the City's goal is to award not less than twenty-five percent of the annual dollar value of all City contracts to MBEs and not less than five percent to WBEs. The FAC alleges that the City can obtain its MBE/WBE contracting goals by either:

> a. Contracting directly with MBE/WBE certified companies through the "target market" program, which designates certain contracts for competition limited exclusively to MBE/WBE companies; or
>
> b. Including a requirement in all City contracts of a value in excess of $10,000 that the contractor awarded that contract commit to the expenditure of at least the MBE/WBE percentages of the dollar value of the contract with MBE/WBE firms.

FAC at ¶ 42(b).

Relators generally allege two categories of false claims: false certification and false invoices. More specifically, they allege that Defendants submitted false documentation to the City so that various businesses in the McMahon Family Business Enterprise would receive certification as MBEs/WBEs. The documentation was false insofar as these companies were owned and run by three brothers—Anthony, John and Frank McMahon—none of whom were minorities or women. Through these false MBE/WBE certifications, Defendants fraudulently obtained millions of dollars-worth of municipal contracts with multiple public entities, including the City of Chicago, John H. Stroger Jr. Hospital of Cook County, Juvenile Temporary Detention Center of Cook County, Cook County Bureau of Health Services, Chicago Board of Education,

3

Chicago Public Schools, and the Chicago Housing Authority ("CHA"). According to the FAC, many of these contracts or agencies were federally funded. Relators further allege that after winning these contracts, Defendants submitted false invoices overbilling the relevant agencies.

    A.    **False Certifications**

        1.    **McMahon Food and McMahon Dairy**

The McMahon family incorporated Defendant McMahon Dairy Products, Inc. in 1987. Although Frank McMahon was the owner, operator and chief decision-maker, he began listing his mother, Catherine McMahon, as the president and principal owner in 1990 to obtain WBE certification. In 1991, he incorporated a second company, Defendant McMahon Food Corporation, again listing Catherine as the president and principal owner for the same purpose. When Catherine became ill, Frank replaced her with his daughters, who are co-defendants in this action—first Mary and then Bridget. None of the three women ever were involved in the management, operations, decision-making or any other aspect of either business; rather, Frank continued to run the business until his recent death. Based on these allegedly false certifications as WBEs, both McMahon Dairy and McMahon Food won various contracts and subcontracts in which they agreed to distribute food to the City and the Board of Education. With each contract and request for payment on the contracts, Bridget McMahon falsely certified to the City that McMahon Food was a WBE.

In further support of these allegations, the FAC alleges details regarding twenty three contracts between McMahon Food and the John H. Stroger Jr. Hospital of Cook County, the Juvenile Temporary Detention Center of Cook County, and the Cook County Bureau of Health Services; specifically, it sets out the date awarded, the contract number, the services provided and the contract value of each contract. The total value of these contracts, which are allegedly only a sample of the larger pool of contracts, is $4,463,802.65.

### 2. Windy City Electric and Ace Mechanical

Frank's brothers, Anthony and John, allegedly expanded the McMahon Family Business Enterprise by incorporating Defendant Windy City Electric Co. in 1989. To receive WBE certification, the brothers listed their wives as the officers and owners. Specifically, they listed Nancy McMahon as president, Kathleen McMahon as secretary, and both women as 50 percent co-owners. Neither woman has ever been involved in the management, operations, decision-making or any other aspect of Windy City Electric, although Kathleen did assist in everyday business around the office. Rather, Anthony and John McMahon oversaw and managed the company. Windy City Electric allegedly won various contracts and subcontracts with the City, the CHA, and the Board of Education based on its allegedly false certification as a WBE.

In 2006, the McMahons also formed Defendant Windy City Electric Aviation Corporation. The McMahons again listed Nancy as president, Kathleen as secretary, and each woman as a 50 percent co-owner in their corporate records, subsequently obtaining WBE certification.

The FAC alleges that Anthony and John McMahon expanded the McMahon Family Business Enterprise in 1993 by incorporating Defendant Ace Mechanical Co. The idea to create Ace Mechanical arose out of a meeting between Anthony McMahon, John McMahon, and James Harney, who was the former Facilities Director for the Board of Education. At that meeting, Harney mentioned that the Board of Education intended to award a significant portion of its funds to minority contractors and that his girlfriend's brother, Jimmy Acevado, could serve as a Hispanic front person for an MBE plumbing contracting company. The McMahons subsequently incorporated Ace Mechanical, listing Acevado as the president and principal owner. Acevado never participated in ownership, management, operations or decision-making; rather, John and Anthony oversaw and managed the company. Ace Mechanical became certified

as an MBE, and, based on this false certification, it fraudulently obtained contracts and subcontracts from the City, the CHA, and the Board of Education for plumbing services from its incorporation in 1993 to its involuntary dissolution in 2008.

Based on its allegedly false MBE/WBE status, Windy City Electric and Ace Mechanical won more than seven City contracts and seven more contracts with the Board of Education specifically. The FAC details the date awarded, the contract number, the services provided and the contract value for each of these contracts, alleging a total value of $25,360,822.68 for the seven City contracts and $17,091,142.00 for the seven Board of Education contracts.

### 3. C&M JV1 Company, Ltd.

In 2003, the McMahons expanded the family businesses by incorporating Defendant C&M JV1 Company, Ltd., a joint venture between four businesses, all of which were WBEs: McMahon Food, McMahon Dairy, C & C Dairy and Krystal Dairy. C&M allegedly won dairy contracts with the City and Board of Education by falsely representing that at least two of its vendors would be drawn from the four WBEs. The FAC further alleges that when the Board of Education awarded C&M contracts, it waived its MBE sub-contracting requirements in reliance on C&M's representation that at least two of its vendors would be WBEs, finding that C&M had made 'good faith efforts' at compliance." FAC at ¶ 68. In support of these allegations, the FAC points to six contracts between C&M and the Board of Education, all awarded between 2005 and 2010, in which C&M agreed to supply dairy products to the Chicago Public Schools; it again provides the date, number, value and services associated with each contract, stating that these six examples are only a subset of the total contracts. The total alleged value of these six contracts was approximately $74,741,540.

### 4. Plumbing Systems, Inc.

In 2005, the McMahons incorporated Defendant Plumbing Systems, Inc., listing John as president, Anthony as secretary, and both brothers as 50 percent co-owners. The two brothers allegedly used false MBE suppliers, such as "Jose Supply," to meet the government's MBE's requirements. "Jose Supply" did not supply any plumbing tools or materials for government contracts and allegedly operated out of a telephone booth. From approximately 2005 to the present, Plumbing Systems has worked directly or indirectly on Government contracts with the CHA, the City of Chicago, and the Board of Education. The brothers allegedly pay front minorities like "Jose" a percentage of the amount billed for supplies.

### 5. Submission of False Documentation Generally

The FAC further alleges that Anthony allegedly prepared and submitted false documentation to the City, the CHA, and the Board of Education in connection with McMahon Food, McMahon Dairy, and Ace Mechanical's MBE/WBE status. Bridget, Nancy, Kathleen, and Jimmy Acevado each signed the disclosures, affidavits and other paperwork prepared by Anthony, knowing that they were not actually involved in the ownership, management and operations of these three companies. Defendant Susan Thies, a notary public and employee of Windy City Electric, allegedly notarized paperwork prepared by Anthony, knowing that Bridget, Nancy, Kathleen, and Acevado were not involved in the ownership management and operations of the three companies. Meanwhile, John, Anthony, and Defendant Daniel Hebert were primarily responsible for submitting the false paperwork in connection with the CHA contracts specifically.

### 6. Nexus with Federal Funds

Relators make three allegations connecting these contracts with federal funds. First, according to the FAC, two of Windy City Electric and/or Ace Mechanical's City contracts allegedly were for services at O'Hare and Midway Airports. The first contract was awarded on

7

June 2, 2003, for low voltage power distribution equipment replacement at O'Hare. The second contract was awarded on December 9, 2003 for an emergency generator installation at Midway. The FAC alleges on information and belief that the airport contracts were "heavily subsidized by the federal government." FAC at ¶ 85. Second, the FAC alleges on information and belief that many of the Board of Education contracts with the McMahon Family Business Enterprise, which were awarded from 1990 to at least 2011, were at least partially funded by the United States. *Id.* at ¶ 94. Third, the FCA alleges that the CHA has received millions of dollars in federal funding from the United States Department of Housing and Urban Development ("HUD") to redevelop and modernize public housing units for lower income residents. For example, Plaintiffs allege that in 2009 the CHA received at least $144 million in formula funds and $66 in competitive grants from HUD for such purposes. They allege that the CHA, in turn, contracted with the McMahon Family Business Enterprise from approximately 2000 to at least 2011.

### B. False invoices

In addition to alleging false certification, Relators allege that Defendants submitted false invoices to the City, the Board of Education and the CHA. Specifically, they allege that the McMahons fraudulently billed the government for unused materials and unperformed work. They also billed at rates higher than the contract rates and created a "ghost payroll" scheme for nonexistent employees. More specifically, they billed out John McMahon at the higher City journeyman plumber's rate although he is not a plumber. They allegedly submitted these false invoices with the assistance of Defendant Daniel Hebert.

### C. Defendant Brett Siebert

Lastly, the FAC names the McMahon's brother-in-law, Brett Siebert, as a co-Defendant. It alleges only that one of Brett Siebert's construction companies, financed by the McMahons, built an addition to the McMahon's headquarters.

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

Claims brought under the FCA also are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *United States ex rel. Gross v. AIDS Research Alliance-*

*Chicago*, 415 F.3d 601, 604 (7th Cir. 2005) (citation omitted). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The heightened pleading standard serves three main purposes: "(1) protecting a defendant's reputation from harm; (2) minimizing strike suits and fishing expeditions; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (citations and internal quotation marks omitted). Accordingly, Rule 9(b) requires a plaintiff to "do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Specifically, a plaintiff must state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc.*, 20 F.3d at 777 (citations omitted). In other words, a plaintiff must do "more than the usual investigation before filing his complaint." *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007) (overruled on other grounds). She must plead the "who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (citation and internal quotation marks omitted). Furthermore, "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Id.* at 442 (citation omitted). To plead fraud on information and belief, a plaintiff must also plead that "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Id.* at 443 (citations and internal quotation marks omitted). The provided grounds "must make the allegations *plausible,*

even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Id.*

### III. Analysis

To combat fraud, the False Claims Act and the IFCA impose liability on any person who

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B) * * *

31 U.S.C. § 3729(a)(1)(A-C); 740 Ill. Comp. Stat. 175/3(a)(1)(A-C).

From a practical standpoint, it would be impossible for the government alone to unmask and prosecute all potential FCA violations. Accordingly, the statute provides a *qui tam* enforcement mechanism, which allows a private party (*i.e.,* a relator) to bring a lawsuit on behalf of the government and against an entity to recover money the government paid as a result of fraudulent claims. See 31 U.S.C. § 3730(b). A *qui tam* complaint is filed *in camera* and remains under seal for at least 60 days. 31 U.S.C. § 3730(b)(2). During this period, the relator presents all material evidence to the government, and the government investigates and decides whether to intervene and proceed with the action itself. 31 U.S.C. § 3730(b)(2). If the government proceeds with the case, the relator can receive between 15 and 25 percent of the government's recovery, depending on the extent to which the relator contributed to the prosecution of the action, plus reasonable expenses. 31 U.S.C. § 3730(d)(1). If the government declines to intervene, the relator may proceed with the action alone. 31 U.S.C. § 3730(b)(4)(B). If successful, the relator can receive between 25 and 30 percent of any recovery obtained, plus reasonable expenses. 31 U.S.C. § 3730(d)(2).

Defendants make five arguments for dismissal under Federal Rules of Civil Procedure 12(b)(6) and 9(b). First, they argue that the FAC fails to allege that certification of MBE/WBE status was a condition of government payment, warranting dismissal under Rule 12(b)(6); second, that Relators' fail to sufficiently allege a connection between the false claims and federal and state funds, warranting dismissal under Rules 12(b)(6) and 9(b); third, that many of the alleged false claims are time-barred under the FCA and IWRPA; fourth, that the FAC fails to plead sufficient facts regarding the false invoices under Rule 9(b); and, fifth, that the FAC insufficiently alleges the involvement of C&M, Susan Thies, Daniel Hebert, and Brett Siebert.

The second of these arguments is dispositive. The amended complaint fails to sufficiently allege a connection between the false claims and federal funds under Rule 9(b), a prerequisite for maintaining a federal FCA claim. Should Plaintiffs not successfully replead to satisfy this element of a federal FCA claim, the Court decline to exercise supplemental jurisdiction over the state claims brought under Illinois law. Accordingly, the Court will dismiss the case in its entirety unless Plaintiffs can successfully replead their federal claims.

### A. Alleged Connection with Federal Funds

The FAC alleges conduct occurring from the 1990s and to the present. In 2009, Congress passed the Fraud Enforcement and Recovery Act ("FERA"), which amended the FCA. Because of this amendment, two different versions of the statute apply during the relevant period. Before the 2009 amendment, the FCA imposed liability on a defendant who

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

31 U.S.C. §3729(a)(1-3) (2006). The amended FCA imposes liability on anyone who

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (C) conspires to commit a violation of subparagraph (A), (B) * * *

31 U.S.C. § 3729(a)(1)(A-C). It expands the scope of a "claim" to include, in part:

> any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that * * * is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government * * * provides or has provided any portion of the money or property requested or demanded * * *

31 U.S.C. § 3729(b)(2) (internal statutory numbering omitted).

Thus, under the amended FCA, liability attaches "whenever a person knowingly makes a false claim to obtain money or property, any part of which is provided by the Government without regard to whether the wrongdoer deals directly with the Federal Government; with an agent acting on the Government's behalf, or with a third party contractor, grantee, or other recipient of such money or property." *United States ex rel. Kester v. Novartis Pharm. Corp.*, 88 Fed. R. Serv. 3d 1261, at *6 (S.D.N.Y. 2014) (quoting *United States ex rel. Osmose, Inc. v. Chem. Specialties, Inc.*, 994 F. Supp. 2d 353, 361 (W.D.N.Y. 2014) (quoting S. Rep. No. 111-10, at 10-11 (2009), reprinted in 2009 U.S.C.C.A.N. 430, 438)). Senate Report No. 111–10 explains the reason for this change:

> This section amends the FCA to clarify and correct erroneous interpretations of the law that were decided in *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008), and *United States ex rel. Totten v. Bombardier Corp*, 380 F.3d 488 (D.C. Cir. 2004). In *Allison Engine*, the Supreme Court held that Section 3729(a)(2) of the FCA requires the Government to prove that "a defendant must intend that the Government itself pay the claim," for there to be a

violation. 128 S. Ct. at 2128. As a result, even when a subcontractor in a large Government contract knowingly submits a false claim to general contractor and gets paid with Government funds, there can be no liability unless the subcontractor intended to defraud the Federal Government, not just their general contractor. This is contrary to Congress's original intent in passing the law and creates a new element in a FCA claim and a new defense for any subcontractor that are inconsistent with the purpose and language of the statute. Similarly, in *Totten*, the Court of Appeals for the District of Columbia Circuit held that liability under the FCA can only attach if the claim is "presented to an officer or employee of the Government before liability can attach." 380 F. 3d at 490. Known as the "presentment clause," the D.C. Circuit interpreted this clause to limit recovery for frauds committed by a Government contractor when the funds are expended by a Government grantee, such as Amtrak. The *Totten* decision, like the *Allison Engine* decision, runs contrary to the clear language and congressional intent of the FCA by exempting subcontractors who knowingly submit false claims to general contractors and are paid with Government funds.

S. Rep. 111-10, at 10-11 (2009), reprinted in 2009 U.S.C.C.A.N. 430, 438. For example, Congress intended for the amended FCA to reach "all false claims submitted to State administered Medicaid programs." *Id.* at 11.

Under FERA, the amendments to various sections of the FCA became effective at different times. Section 3729(a)(1)(A) of the amended FCA imposes liability for conduct occurring on or after May 20, 2009, FERA's effective date. Pub.L. No. 111–21, § 4(f), 123 Stat. 1617 (2009). Subparagraph (B), however, "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date." Pub. L. No. 111–21, § 4(f)(1), 123 Stat. 1617 (2009). Courts have interpreted "all claims" differently—some interpreting it to refer to requests by the Defendant for government payment and others interpreting it to mean judicial proceedings. *Compare Sanders v. Allison Engine Co., Inc.,* 703 F.3d 930, 942 (6th Cir. 2012) (applying effective date to pending judicial cases) *with United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1051 n.1 (9th Cir. 2011) (finding that amendment applied retroactively to requests or demands for money or property pending on or after of June 7, 2008); *and Hopper v. Solvay Pharm., Inc.,*

588 F.3d 1318, 1327 n.3 (11th Cir. 2009) (same). Courts interpreting "all claims" to mean requests for government payment have based their interpretations on the amended FCA's definition of a "claim," in part, as "any request or demand, whether under a contract or otherwise, for money or property." 31 U.S.C. § 3729(b)(2)(A) (2009); see, *e.g.*, *Hopper*, 588 F.3d at 1327; *Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 734-35 (N.D. Ill. 2010) ("Statutory definitions control the meaning of statutory words"); *United States v. Sci. Applications Int'l Corp.*, 653 F. Supp. 2d 87, 107 (D.D.C. 2009) (same) (vacated on other grounds). They also have based their interpretation on § 4(f)(1), which immediately follows the section at issue here. See, *e.g.*, *id*. Section 4(f)(1) provides that certain amended sections "shall apply to *cases* pending on the date of enactment" (emphasis added). These courts reason that "[i]f Congress intended the retroactivity of § 4(f)(1) be measured by 'cases,' it would have said so just as it did in § 4(f)(2)." *Mason*, 731 F. Supp. 2d at 735. See, *e.g.*, *Sci. Applications Int'l Corp.*, 653 F. Supp. 2d at 107; *United States ex rel. Carpenter v. Abbott Laboratories, Inc.,* 723 F. Supp. 2d 395, 402, n. 15 (D. Mass. 2010); *United States ex rel. Putnam v. E. Idaho Reg'l Med. Ctr.,* 696 F. Supp. 2d 1190, 1196 (D. Idaho 2010).

The Seventh Circuit has not expressly analyzed this issue. It has, however, stated in *U.S. ex rel. Yannacopoulos v. General Dynamics* that § 3729(a)(1)(B) applies to "cases such as this pending on or after June 7, 2008." 652 F.3d 818, 822 n.2 (7th Cir. 2011). In *Yannacopoulos*, the plaintiff alleged unlawful conduct occurring during the 1980s and 1990s. The case was pending as of June 7, 2008, and the Court applied the amended version of the FCA. Although the arguments in favor of interpreting "all claims" to mean requests for payment are strong, and the Seventh Circuit has not explicitly rejected them, this Court is bound to follow *Yannacopoulos* absent some indication that the Seventh Circuit has disavowed it. Accordingly, the Court will apply § 3729(a)(1)(B) of the amended FCA, not §3729(a)(2) of the older version, to the alleged

15

false claims in this action. In other words, § 3729(a)(1) of the pre-amendment FCA applies to conduct that the FAC alleges occurred before May 20, 2009. Section 3729(a)(1)(A) of the amended FCA applies to conduct that allegedly occurred on or after May 20, 2009. And § 3729(a)(1)(B) of the amended FCA applies to all conduct alleged.

The question before the Court thus is whether Relators have adequately pled the connection with federal funds required by these three sections under Rules 12(b)(6) and 9(b). The amended complaint connects Defendants' contracts to federal funds in three ways. First, the FAC alleges on information and belief that two of Windy City Electric and/or Ace Mechanical's City contracts, both awarded in 2003, were airport contracts "heavily subsidized by the federal government." FAC at ¶ 85. Second, the FAC alleges on information and belief that the various Board of Education contracts awarded from 1990 to at least 2011 "were at least partially funded by the United States government." *Id.* at ¶ 94. Third, the FCA alleges that the CHA has received millions of dollars in federal funding from the United States Department of Housing and Urban Development ("HUD") to redevelop and modernize public housing units for lower income residents, receiving at least $200 million in 2009 alone; they allege that the CHA, in turn, contracted with the McMahon Family Business Enterprise from approximately 2000 to at least 2011.

These factual allegations are insufficient under the heightened pleadings standard in Rule 9(b). In stark contrast to the detailed nature of the allegations elsewhere in the FAC, in making the first and second alleged connections—that certain contracts were subsidized by the federal government—Relators fail to provide any detail as to the nature of the subsidies. Moreover, they plead on information and belief. A plaintiff may plead fraud based on information and belief "so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli*, 631 F.3d at 443 (citations and internal

quotation marks omitted). As to the first requirement, Relators argue that they lack access to further information about the contracts at issue. That argument is questionable at best in light of the Illinois Freedom of Information Act, which provides that all records in the custody or possession of a public body are presumptively open to inspection and that any public body asserting that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt. 5 ILCS 140/1.2. But even if Relators could not obtain the contracts or sufficient information about them under the FOIA, the second requirement is dispositive; Relators do not plead the grounds for their suspicions. In their response brief, Relators state that they are the cousins of some of the Defendants, but this statement provides too little information and comes in a motion rather than the pleadings. Most notably, it fails to articulate the actual grounds for suspicion that certain contracts were funded by the federal government.

Only one fact in support of a connection with federal funds remains: that HUD funded the CHA and that the CHA awarded contracts to Defendants. To the extent that Relators allege a violation of § 3729(a)(1) of the pre-amendment FCA, they fail to state a claim under rule 12(b)(6). Under § 3729(a)(1), a plaintiff must plead that the defendant "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government" a false claim. In contending that HUD funded the CHA and that the CHA then contracted with Defendants, Relators fail to make an allegation of presentment.

Second, to the extent that Relators allege a violation of the amended FCA, they still fail to state a claim, if not under Rule 12(b)(6) then certainly under Rule 9(b). For a false claim to exist under the amended FCA, the United States must have provided a "portion of the money or property requested or demanded." 31 U.S.C. § 3729(b)(2). The FAC alleges only that HUD transferred funds to the CHA, which then contracted with Defendants; it does not expressly

allege that the CHA paid Defendants using HUD funding. Assuming this attenuated connection were sufficient to survive Rule 12(b)(6), which is questionable, it would fail to survive Rule 9(b) insofar as it fails to particularize how any HUD funding made its way into Defendants' hands; it draws a connection that is too factually sparse and too attenuated to survive the heightened pleading standard. Accordingly, Relators' claims brought under § 3729(a)(1)(A), (B) and therefore (C) of the Amended FCA are dismissed.

### B. State Claims

The FAC alleges that the Court has supplemental jurisdiction over Relators' state law claims under 31 U.S.C. § 3732(b) and 28 U.S.C. § 1367. Under 31 U.S.C. § 3732(b), a district court has jurisdiction over state actions arising from the same transaction or occurrence as an FCA action brought under section 3730. Under 28 U.S.C. § 1367, a district court has supplemental jurisdiction over state claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Animated by the principle of comity, the Seventh Circuit has stated consistently that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). See also *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Exceptions to the general rule exist "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided."

18

*Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (internal quotation marks omitted).

None of these exceptions applies. First, in all likelihood, Plaintiffs may file their Illinois claims in state court. Not only does their complaint allege state law violations continuing to the present, but under the Illinois Savings Statute, 735 ILCS 5/13–217, where a federal court dismisses state law claims for lack of jurisdiction, a plaintiff has one year following dismissal to file those claims in state court. Second, this case is only at the motion to dismiss stage, so substantial judicial resources have not been committed. Third, given Defendants' remaining arguments for dismissal and the absence of discovery, the outcome of the Illinois claims remains uncertain. Finding no justification for departing from that "usual practice" in this case, the Court will dismiss Plaintiffs' state law claims without prejudice unless Plaintiffs can successfully replead their federal claims.

## IV.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss all counts [51]. If Relators have additional factual allegations they believe may overcome the deficiencies identified by the Court and the deficiencies they acknowledge with respect to Defendant Brett Siebert, they may file an amended complaint within 28 days of the entry of this memorandum opinion and order. If Plaintiffs choose not to replead, or if all federal claims in their amended complaint are dismissed, the Court will dismiss the state law claims without prejudice.

Dated: January 5, 2015

_____
Robert M. Dow, Jr.
United States District Judge

19